Nott, J.,
delivered tbe opinion of the court:
The facts in this case are of two kinds: first, those which are established by competent evidence; second, those which are hypothetical.
As to the former, we remark that the only competent evidence in the case consists of the title bond bearing date December 31, 1859, from Williams, trustee, to Wilson and Boss; the deed bearing date April 8, 1861, from Ross to Wilson, and the subsequent conveyance, bearing date July 7, 1866, from Williams to Wilson.
As to the latter, and the evidence by which they are presented, the court notes the following defects:
1. The decree of the court of chancery, entered April 1,1870, which is relied upon to show that the title of Reuel Hough to a tax-sale certificate was divested and passed to Nortrop & De Bevoisse, does not show that the court had jurisdiction of Reuel Hough, nor even that he was a party to the suit. It is, moreover, as it stands, contradictory, the body of the decree reciting that the tax certificate was assigned and set over by certain commissioners to be the property of Nortrop & De Bevoisse, while the report itself, which is confirmed' by the decree, shows that it was assigned and set over to Hough, Nortrop & De Bevoisse.
2. The parol evidence relied upon to establish the contents of the deeds or conveyances from Wilson to Chew, from Chew’s executor to Kelly, and from Kelly to the claimant is incompetent, it appearing that all of those deeds are of record if not in existence.
3. The testimony of Wilson, stating that he, “representing the executor of R. B. Chew, deceased,” sold an undivided interest in the property to "Martin Kelly is incompetent to show that he was executor, or that he had authority to represent the executor, or that the executor had authority to sell and convey.
4. The testimony of the same witness to the effect that possession was given by Williams at the time of sale in 1859, and that the claimant has been in undisturbed possession ever since, is insufficient to establish either the possession of Williams or the possession of his grantees. What is possession is a question of law, and the acts constituting it must be shown.
*137 The facts established by competent evidence and the facts indicated by parol, that is to say, the facts which probably exist and those which it is supposed the claimant will be able to establish by, proper documentary evidence, when taken together, are correctly stated by the defendants’ counsel, as follows:
“ In December, 1859, Joseph R. Williams, one of two surviving trustees, bargained and sold by quitclaim to W. B. Ross and W. P. Wilson, the claimant, part of lot 204, being the property which was subsequently sold for the direct tax.
“ On March 7,1800, Wilson, the claimant, conveyed by deed all of his interest acquired by reasou of said title bond to R. E. Chew, which divested him of all interest whatever acquired by him in said property under the title bond of Williams, trustee.
“In April, 1861, W. B. Ross conveyed to Wilson the interest acquired by him under the original title bond of Williams, trustee.
“ The interest to that part of the lot conveyed by the claimant to Chew did not become reinvested in Wilson until October 30, 1866, subsequent to the direct tax sale, which occurred June 21, 1864.
“ In July, 1866, Williams, trustee, executed and, delivered to the claimant a quitclaim deed for the lot.”
When this statement is analyzed the following ultimate facts appear:
1. At the time of the tax sale Wilson, the claimant, owned an undivided half of the equity of redemption under the title bond of Williams, trustee, and R. E. Chew the other half.
2. After the tax sale the grantor, Williams, conveyed to the claimant the whole of the legal title.
3. Still later the other half of the equitable estate held by Chew was conveyed by Chew or his grantee to the claimant; so that if the foregoing conveyances were good and valid, the claimant then became invested with the entire legal and equitable estates in the land.
But in this connection the following absence of material facts should be noted :
1. It does not appear that the original grantor at the time of sale was in actual possession of the demised property, apparently a vacant, unoccupied, uninclosed town lot, or that he was seized of it by a good and valid title.
2. It does not appear that the grantees under the title bond of Williams acquired an actual or legal possession pf the prop *138 ■erty, nor that they paid State, county, or municipal taxes upon it, nor that they exercised any acts of ownership.
3. It does not appear that the claimant was ever dispossessed under the direct tax sale, nor that the purchaser, Eeuel Hough, has ever released the estate acquired by him or parted with the tax-sale certificate.
But inasmuch as it is manifest to the court that competent evidence can be supplied and substituted for that which is incompetent, the case will be remanded; and to the end that ■counsel on both sides may more intelligently deal with legal ■questions involved, which, in the judgment of the court, go to the merits, the court will declare its opinion upon the case that was argued and submitted.
The Direct Tax Act, 1861 (12 Stat. L., §36, p. 292), does indeed provide that in the case of a sale of land the “ surplus shall be deposited in the Treasury,” “ to be there held for the use of the owner or his legal representativesBut this term “ ownerf when applied to realty, is necessarily a term of wide and varied meaning, and in administering the statute the court, when construing the term, must be guided and restricted by the law of real property.
In the case of Franklin B. Bodgers, just decided, we have examined the law of Tennessee and have found that the instrument termed a title bond places the contracting parties in the positions of mortgagor and mortgagee, and that the obligation of keeping down the taxes, as in the case of a tenant for life, rests upon the mortgagor in possession. In the present case that obligation is all the more apparent because the title bond ■expressly provides that existing taxes shall be paid by the grantor, and by implication casts the obligation of paying-subsequent taxes upon the purchasers.
The claimant therefore at the time of sale was simply one of two mortgagors who had not discharged the mortgage by paying the installments of purchase-money according to the obligations of the title bond; and if the case stopped at that point we should be compelled to hold that the mortgagee, that is to say the original grantor, was the owner within the meaning of the statute, or at least a necessary party to this action.
But the case does not stop at that point. The grantees under the title bond must be regarded as in possession as against their grantor, though they may not have been in possession as *139 against all tbe world. Taking as joint purchasers under a common instrument, possession of one was possession for both. Being thus in possession at the time when the tax sale took place, they were, according to tlie decisions of the courts of Tennessee, the owners of an equitable estate in the property, and entitled as a matter of right to acquire the legal title. Before they were ousted of possession the claimant discharged the remaining installments of their indebtedness and procured from their grantor to himself a conveyance of the outstanding legal estate in the land. Whether he took this legal estate in his own right or for the mutual benefit of himself and the other joint purchaser is immaterial, for it was followed by the release or deed of that person, and thus the whole of the legal and equitable estate nominally became vested in the claimant.
We say “nominally became vested in the claimant” because the counsel for the Government contends that all conveyances subsequent to thetax'sale were inoperative, and that the owner of the legal estate in the property at the time of the sale alone can maintain an action tor the surplus.
As to this defense there are two things to be said:
In the first i>lace, the question of controversy is not between the claimant and the United States, but between the claimant and his grantor who held the legal estate at the time of sale. It is true that the grantor is not before the court, and it is true that he does not seek to come before the court, but the defendants, conceding that they hold a surplus fund to which they are not entitled, and in which they have no interest, set up his right and title to it and stand upon that as their defense. The question, therefore, now under consideration is simply whether he or the claimant has the superior right and is the party who should bring the action.
In the second place there are cases in the law of real property where a deed, or release, or decree does not operate according to its date or terms, but by relation. Thus in the recent case of Ann & Emily Elliott (20 C. Cls. R., 328) it appeared that the owner of property sold for taxes had previously devised it to his children, subject, however, with other realty to a legacy which might become a direct charge upon the land. More than twenty years after the land had been sold for the direct tax a court of competent jurisdiction, treating it as if still in existence, and subject to the provisions of the will, de *140 creed the legacy to be a charge and lien upon it; and this court, in furtherance of the same equitable principle, held that, by virtue of that decree, the legacy attached to the surplus in the Treasury, and the legatees became the proper parties to maintain an action. Thus the right to maintain an action as owner of the property depended upon the decree of a State court rendered twenty years after the property had been sold.
Again, in the recent case of Lawton (110 U. S. R., 146), the legal title to the property at the time of the tax sale was in trustees, and the claimant was neither trustee nor cestui que trust. Subsequent to the sale the trust estate terminated, and then, and not till then, the title vested in the claimant. This did not take place till long after the sale, yet he was deemed the “ owner” of the property within the meaning of the statute, and as remainder-man entitled to maintain an action for the surplus.
Again, a title may be acquired by one man which will inure to the benefit of another though no deed pass. Thus if a grantor have no title whatever, yet if he convey with covenants of warranty, a title subsequently acquired by him will immediately inure to his grantees, and they will be as completely invested with the newly acquired title as if it had been possessed by their grantor at the time of his conveyance to them.
The court is therefore of the opinion, upon the case presented and argued, that the deed from Williams, trustee, to the claimant operated by relation as of the time when the equitable estate passed to his grantees, that is to say, as of the time when the title bond was delivered and the grantees under it acquired their equitable estate in the property. In other words, when the grantor, Williams, accepted payment of the mortgage debt and executed a deed conveying all of his remaining estate and interest in the property, he thereby relinquished all claim upon the surplus fund, and the incomplete equitable estate of the claimant merged in the legal estate, and his inchoate right to the surplus became perfect and complete.
But this conclusion does not extend to the anterior question whether the grantor, Williams, was the owner of the property. All which is now determined is that, as between him and the claimant, the latter may maintain an action for the surplus. It has never been held in these cases that a claimant must virtually maintain an action of ejectment; yet something more *141 than proof of a nominal paper title certainly is necessary to protect the Government and to satisfy the conscience of the court. That a person at the time of the tax sale was in .the actual undisturbed possession of the property under color of title has hitherto been deemed sufficient evidence of title. Where actual possession cannot be shown, as in the case of unoccupied property and vacant lots, the claimant must show either a complete title or that the property was assessed to him, or to those under whom he held, and that he or they paid the taxes' thereon for a period covered by the State statute of limitations.
The case is remanded to the trial docket, with leave to the parties to introduce such additional evidence as they may deem necessary.